IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| ALI LONDON, in his individual capacity and a next of friend for L.L., <br><br> Plaintiff, <br><br> vs. <br><br><br> MICHAEL HEH, *et al.*, <br><br> Defendants. | Case No. 22-cv-00491-DKW-KJM <br><br> **ORDER (1) GRANTING DEFENDANT CITY AND COUNTY OF HONOLULU'S MOTION FOR JUDGMENT ON THE PLEADINGS; (2) GRANTING IN PART DEFENDANTS ANDREW TYAU-BEAM AND BYRON BEATTY'S MOTION FOR JUDGMENT ON THE PLEADINGS; AND (3) HOLDING IN ABEYANCE DEFENDANTS MICHAEL HEH, MARIA HEH, WENDY STAFFORD, NICOLE LINKE, AND TURTLE BAY CONDOS LLC'S MOTION FOR SUMMARY JUDGMENT** |

Plaintiff Ali London brings suit against the City and County of Honolulu (the "City"), Honolulu Police Department Officers Andrew Tyau-Beam and Byron Beatty (the "Officers"), and his former landlords and rental agents, Michael Heh, Maria Heh, Wendy Stafford, Nicole Linke, and Turtle Bay Condos, LLC (collectively the "Rental Defendants") for alleged violations of state laws and the United States Constitution arising out of an eviction during the COVID-19 pandemic.  Dkt. No. 1.  Before the Court are two partially unopposed motions for

judgment on the pleadings ("MJOPs"),[1] filed by the City, Dkt. No. 61, and the Officers, Dkt. No. 62, and a motion for partial summary judgment filed by the Rental Defendants, Dkt. No. 63.

Having reviewed the Complaint, the motions briefing, and the record generally, the Court agrees that the City and the Officers are entitled to judgment on the pleadings with regard to London's federal claims and state law tort claims. Specifically, the Court finds that London has conceded the City and Officers' arguments as to qualified immunity, the qualified or conditional privilege, the negligent hiring, training, and/or supervision claim, and the *Monell* ratification claim, and has failed to adequately plead the *Monell* failure to train claim. Accordingly, as more fully discussed below, the City's MJOP is GRANTED and the Officers' MJOP is GRANTED IN PART.  Because the Court grants London partial leave to amend only his *Monell* failure to train claim, the Officers' arguments as to the Hawaiʻi Fair Housing Act (Count VIII) and the Rental Defendants' motion for partial summary judgment are HELD IN ABEYANCE pending determination of whether there is a cognizable federal claim to support the exercise of subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

---

[1]In both of his Oppositions to the MJOPs, London indicated that he "does not oppose portions of Motion to the extent they are not addressed in this Memorandum."  Dkt. No. 71 at 10 n.2; Dkt. No. 72 at 10 n.2.

## FACTUAL & PROCEDURAL BACKGROUND[2]

Plaintiff Ali London is of "British East African" descent and has custody of his minor daughter, L.L., who is of "British East African" and Native Hawaiian descent.  Complaint at ¶¶ 1–2, Dkt. No. 1.  In the summer of 2020, London contacted Michael Heh and his agent, Wendy Stafford, regarding renting the Hehs' Honolulu apartment.  *Id.* at ¶¶ 15, 20, 51.  Shortly thereafter, on August 7, 2020, London and Heh entered into a written agreement to rent the apartment from August 7, 2020 to September 2, 2020.  *Id*. at ¶ 17.  On August 31, 2020, London and Heh entered into a second written rental agreement for September 1, 2020 to October 1, 2020.[3]  *Id.* at ¶ 18.  Finally, on September 25, 2020, London and Heh entered in a third written rental agreement for October 1, 2020 to November 1, 2020.  *Id.* at ¶ 19.

From late September 2020, London claims that the Hehs, Stafford, and Nicole Linke, another alleged rental agent, began acting in an increasingly hostile manner, including demanding he pay higher rent, aggressively approaching him, throwing hard objects in his direction, sending him threatening text messages, disconnecting his electricity, cable, and Internet services, and locking the front

---

[2]The relevant facts are taken from the Complaint and assumed to be true solely for purposes of the MJOPs.
[3]Although the Complaint states that the second agreement's "rental term was from September 1, 2020 to August 1, 2020," this appears to be a typographical error.  Complaint at ¶¶ 18–19, Dkt. No. 1; *see* Dkt. No. 63-5 at 1.

door of the rental. *Id.* at ¶¶ 20–24.  On November 1, 2020, Stafford came to the apartment and attempted to forcibly remove London and his daughter. *Id.* at ¶ 25. London called the police who explained to Stafford that they lacked jurisdiction over evictions and that there was an operative eviction moratorium due to the State of Hawaiʻi's COVID-19 Emergency Proclamation. *Id.* at ¶¶ 26–27.  According to London, Stafford responded by falsely claiming that London was using a false identity and had engaged in a physical altercation with a former neighbor. *Id.* at ¶ 28.

On November 22, 2020, the Hehs, Stafford, and Linke forcibly entered the apartment while yelling at London to "get out." *Id.* at ¶¶ 29, 31.  In doing so, London alleges that the Rental Defendants intended to evict him by falsely claiming that he had only entered into a short-term rental agreement and that the Hehs intended to occupy the unit. *Id.* at ¶¶ 30–31.  London called the police and Officers Tyau-Beam and Beatty responded shortly thereafter. *Id.* at ¶ 33–35.  Unbeknownst to London, Officer Tyau-Beam was apparently personal friends with Stafford. *Id.* at ¶ 38.

Upon their arrival, the Officers first spoke to Michael Heh, Linke, and Stafford who provided them with unspecified false information about London. *Id.* at ¶¶ 36–37, 39, 45.  The Officers then spoke to London who informed them he wished to file a police report. *Id.* at ¶¶ 39–40.  After declining to allow him to do so, the Officers detained and interrogated London, instructing him to vacate and

threatening to arrest him and remove L.L. from his custody should he refuse to do so. *Id.* at ¶¶ 41–44.  Throughout the entire incident, the Hehs, Stafford, and Linke were filming on their cellphones. *Id.* at ¶ 46.  London subsequently vacated the unit, injuring his back in the process. *Id.* at ¶¶ 47–48.

On September 28, 2021, London filed a grievance with the Honolulu Police Commission regarding the Officers' conduct on November 22, 2020. *Id.* at ¶ 52. Following referral and investigation, on December 15, 2021, the Professional Standards Office concluded that the Officers had not engaged in any wrongdoing. *Id.* at ¶ 52–53.

On November 21, 2022, London initiated the instant action by filing a Complaint against the Hehs, Stafford, Linke, Turtle Bay Condos LLC, the Honolulu Police Department,[4] the City, and the Officers.  Dkt. No. 1.  The Complaint alleges the following causes of action: (1) wrongful eviction (Count I); (2) wrongful entry (Count II); (3) breach of the covenant of quiet enjoyment/breach of the implied warranty of quiet enjoyment (Count III); (4) invasion of privacy (Count IV); (5) unfair and deceptive trade practices (Count V); (6) assault (Count VI); (7) defamation/defamation per se (Count VII); (8) violation of the Hawaiʻi Fair Housing Act, Haw. Rev. Stat. § 515 (Count VIII); (9) civil

---

[4]On August 8, 2023, the parties stipulated to dismiss with prejudice all claims against the Honolulu Police Department such that it is no longer a Defendant in this case.  Dkt. No. 66.

conspiracy (Count IX); (10) negligent hiring, training, and/or supervision (Count

X); (11) negligence, negligent investigation and enforcement (Count XI); (12)

constitutional claims pursuant to 42 U.S.C. § 1983 for violations of the First

Amendment right to petition the government for redress of grievances (Count XII,

Claim 1) and the Fourteenth Amendment rights to equal protection (Count XII,

Claim 2), procedural due process (Count XII, Claim 3), and substantive due

process (Count XII, Claim 4), and pursuant to *Monell v. Dep't of Soc. Servs. of*

*City of New York*, 436 U.S. 658, 691 (1978), for failure to train (Count XII, Claim

5) and ratification (Count XII, Claim 6); (13) intentional infliction of emotional

distress (Count XIII); and (14) negligent infliction of emotional distress (Count

XIV).

On July 26, 2023, the City filed a motion for judgment on the pleadings,

raising, *inter alia*, the qualified or conditional privilege and failure to adequately

plead the various claims.  Dkt. No. 61.  Later that day, the Officers filed a second

motion for judgment on the pleadings, likewise raising the qualified privilege as

well as qualified immunity.  Dkt. No. 62.  On July 27, 2023, the Rental Defendants

additionally filed a motion for partial summary judgment on Counts I, II, and III,

contending that those claims fail as a matter of law.  Dkt. No. 63.  London filed an

Opposition to all three motions on October 12, 2023.  Dkt. Nos. 69–72.  Although

London opposed each of the arguments in the motion for partial summary

judgment, he opposed judgment against the City only on equal protection, procedural due process, and *Monell* failure to train, and against the Officers only on equal protection, procedural due process, violation of the Hawaiʻi Fair Housing Act, and negligent investigation.  *See* Dkt. No. 71 at 10 n.2; Dkt. No. 72 at 10 n.2. On October 20, 2023, each set of Defendants replied.  Dkt. Nos. 74–77.  Pursuant to Local Rule 7.1(c), the Court elected to decide these matters without a hearing, Dkt. No. 78, and this Order follows.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed . . . a party may move for judgment on the pleadings."  In considering a Rule 12(c) motion, the standard is "functionally identical" to that governing a Rule 12(b)(6) motion.  *United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011).

Under Federal Rule of Civil Procedure 12(b)(6), the Court may dismiss a complaint that fails "to state a claim upon which relief can be granted."  Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  In other words, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

570 (2007)).  Moreover, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.*  As such, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Rather, a claim is considered facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556).   Factual allegations that only permit the Court to infer "the mere possibility of misconduct" do not show that the pleader is entitled to relief. *Id*. at 679.

## **DISCUSSION**

The City and Officers contend that their unopposed arguments on qualified immunity, the qualified or conditional privilege, negligent hiring, training, and/or supervision, and *Monell* ratification, as well as London's failure to adequately plead *Monell* failure to train, are dispositive.  The Court addresses each in turn.

## I.   **Qualified Immunity**

The Officers first argue that qualified immunity entitles them to judgment on London's constitutional claims under Section 1983. *See* Dkt. No. 62-1 at 15–25; Dkt. No. 75 at 1–2.  The doctrine of qualified immunity is an affirmative defense which shields government officials from personal liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a

reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 817–

18 (1982).  In order to overcome qualified immunity, the Plaintiff must therefore

"plead facts showing (1) that the official violated a statutory or constitutional right,

and (2) that the right was 'clearly established' at the time of the challenged

conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (citing *Harlow*, 457 U.S.

at 818).  The Court has discretion over the sequence in which to conduct this

inquiry.  *Pearson v. Callahan*, 555 U.S. 223, 238–39 (2009) (recognizing "[w]hen

qualified immunity is asserted at the pleading stage, the precise factual basis for

the plaintiff's claim or claims may be hard to identify.").

　　　Although London argues in his Opposition to the Officers' MJOP that he

adequately pleads his equal protection and procedural due process claims, he fails

to mention qualified immunity, let alone provide any reason or argument as to why

the defense is not generally dispositive of *all* federal claims against the Officers.

Such failure to oppose generally constitutes a concession on that issue.  *See*

*Beckmann v. Ito*, 430 F. Supp. 3d 655, 670–71 (D. Haw. 2020) (dismissing claims

for failure to oppose).  Indeed, even if that were not true, London explicitly

acknowledges the same.  *See* Dkt. No. 72 at 10 n.2 ("Plaintiff does not oppose

portions of Motion to the extent they are not addressed in this Memorandum.").

Accordingly, the Officers' MJOP is granted with respect to all federal claims

against them.

## II.   **The Qualified Privilege**

The Officers also move for judgment on the pleadings on the basis that the qualified privilege bars the state law tort claims against them.[5]  Dkt. No. 62-1 at 7–10.  The City concurs to the extent that London seeks to hold it liable for the same via the doctrine of *respondeat superior*.[6]  Dkt. No. 61-1 at 18–22.

Under Hawai'i law, non-judicial government officials enjoy a qualified or conditional privilege which shields them from individual liability for tortious acts committed in the performance of public duties.  *Towse v. State*, 647 P.2d 696, 702 (Haw. 1982); *Medeiros v. Kondo*, 522 P.2d 1269, 1271–72 (Haw. 1974).  The privilege is lost, however, where the Plaintiff can "demonstrate by clear and convincing proof that those officials were stirred by malice and not by an otherwise proper purpose."  *Towse*, 647 P.2d at 702; *accord Medeiros*, 522 P.2d at 1272.  An official acts with malice when he acts with actual malice—that is, with "the intent, without justification or excuse, to commit a wrongful act, reckless disregard of the law or of a person's legal rights, and ill will; wickedness of heart."

---

[5]These claims include: (1) wrongful eviction (Count I); (2) civil conspiracy (Count IX); (3) negligence, negligent investigation and enforcement (Count XI); (4) intentional infliction of emotional distress (Count XIII); and (5) negligent infliction of emotional distress (Count XIV). *See* Dkt. No. 62-1 at 7–8; *see generally* Dkt. No. 1.

[6]Where individual Officers are entitled to the qualified/conditional privilege on state law claims, the City is likewise entitled to the privilege on the claims as brought through the doctrine of *respondeat superior*.  *See Santiago v. Hawai'i, Cnty. of Hawai'i—Hawai'i Police Dep't*, 2017 WL 6519016, at *18 (D. Haw. Dec. 20, 2017); *Reed v. City & Cnty. of Honolulu*, 873 P.2d 98, 107 (Haw. 1994).

*Awakuni v. Awana*, 165 P.3d 1027, 1042 (2007) (quotations, brackets, and citations omitted).

Here, it is undisputed that the Officers were acting in performance of their duties as police officers during the events of November 22, 2020.  Additionally, the Officers and City assert—and London does not contest—that there is nothing in the record to support that the Officers acted with malice rather than with probable cause to believe that London was trespassing as a result of an overstay of an expired lease.  *See* Dkt. No. 62-1 at 7–10; Dkt. No 61-1 at 18–22.  By wholly failing to address the defense, London has explicitly conceded that the qualified privilege is dispositive of all state law tort claims asserted against the Officers and against the City via the doctrine of *respondeat superior*.  *See* Dkt. No. 71 at 10 n.2; Dkt. No. 72 at 10 n.2.  Consequently, the Officers and the City's MJOPs are granted as to those claims.

## III.   Negligent Hiring, Training, and/or Supervision

The City also moves for judgment on the negligent hiring, training, and/or supervision claims asserted directly against it, claiming that London has failed to sufficiently allege the basic elements of such claims.[7]  In particular, the City

---

[7]Although Hawaiʻi law recognizes a claim for negligent supervision, *see Abraham v. S.E. Onorato Garages*, 446 P.2d 821, 826 (Haw. 1968), and for negligent hiring, *see Janssen v. Am. Hawaii Cruises, Inc.*, 731 P.2d 163, 166 (Haw. 1987), it does not explicitly recognize a claim for negligent training, *see Hyun Ju Park v. City & Cnty. of Honolulu*, 292 F. Supp. 3d 1080, 1102 n.14 (D. Haw. 2018).

asserts that London fails to demonstrate that either the need for greater control or the Officers' dangerous tendencies were foreseeable.  *See* Dkt. No. 61-1 at 22–25; *Otani v. City & Cnty. of Hawaiʻi*, 126 F. Supp. 2d 1299, 1308 (D. Haw. 1998); *Ryder v. Booth*, 2016  WL 2745809, at *10–11 (D. Haw. May 11, 2016).

London once again fails to present any opposition to these arguments.  *See* Dkt. No. 71 at 10 n.2.  Accordingly*,* the City's MJOP is granted as to those claims.

## IV.   *Monell* **Claims**

Finally, the City claims that London's Complaint fails to adequately plead the constitutional claims under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978).  *Monell* provides that municipal liability via Section 1983 may be premised on one of the three following theories:

> First, a local government may be liable if execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicted the injury.  Second, a local government can fail to train employees in a manner that amounts to deliberate indifference to a constitutional right, such that the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need.  Third, a local government may be held liable if the individual who committed the constitutional tort was an official with final policy-making authority or such an official ratified a subordinate's unconstitutional decision or action and the basis for it.

*Rodriguez v. Cnty. of Los Angeles*, 891 F.3d 776, 802–03 (9th Cir. 2018) (quotations, brackets, and citations omitted).  A municipality may not be held liable, however, "*solely* because it employs a tortfeasor—or, in other words, a

municipality cannot be held liable under § 1983 on a *respondeat superior* theory."
*Monell*, 436 U.S. at 691.

London originally brought two *Monell* claims: (1) that the City's failure to
train the Officers in such manner as to prevent the alleged constitutional violations
occurring on November 22, 2020 amounted to deliberate indifference to those
rights; and (2) that the Honolulu Police Department Professional Standards
Office's conclusion that the Officers had not engaged in any wrongdoing
constituted ratification of the same.  Dkt. No. 1 at ¶¶ 130–141.  London now
appears to have conceded judgment on his *Monell* ratification claim by failing to
address it in his Opposition to the City's motion.  *See* Dkt. No. 71 at 10 n.2.  As
such, the Court will further address only London's failure to train claim.

"A municipality's culpability for a deprivation of rights is at its most
tenuous where a claim turns on a failure to train."  *Connick v. Thompson*, 563 U.S.
51, 61 (2011).  To establish municipal liability, the Plaintiff must show: "(1) an
inadequate training program, (2) deliberate indifference on the part of the
[municipality] in adequately training its law enforcement officers, and (3) [that] the
inadequate training 'actually caused' a deprivation of [the Plaintiff's] constitutional
rights."  *Merritt v. Cnty. of Los Angeles*, 875 F.2d 765, 770 (9th Cir. 1989); *see*
*City of Canton v. Harris*, 489 U.S. 378, 390 (1989).  Further, "deliberate
indifference is a stringent standard of fault, requiring proof that a municipal actor

disregarded a known or obvious consequence of his action." *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 410 (1997) (quotations omitted).  The Plaintiff must point to a "<u>particular</u> omission in their training program would cause municipal employees to violate citizens' constitutional rights," or "specific shortcomings in the training . . . or facts that might place the City on notice that constitutional deprivations were likely to occur." *Park*, 292 F. Supp. 3d at 1099 (quotations, brackets, and citations omitted).  This may include "a pattern of tortious conduct by inadequately trained employees" or "a highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations." *Bd. of Cnty. Comm'rs of Bryan Cnty.*, 520 U.S. at 407–09.

Here, London's conclusory allegations fall far short of adequately pleading a failure to train claim under *Monell*.  Count XII (Claim 5) provides:

> 133.  Defendant County and Defendant HPD's training policies were not adequate to prevent the constitutional violations suffered by Plaintiffs at the hands of Defendant Officer Tyau-Beam and/or Defendant Officer Beatty.
>
> 134.  Defendant County and Defendant HPD were deliberately indifferent to the substantial risk that its policies were inadequate to prevent Defendant Officer Tyau-Beam and/or Defendant Officer Beatty from acting in a manner which would deprive Plaintiffs of their constitutionally protected rights.
>
> 135.  Defendant County and Defendant HPD's failure to prevent Defendant Office Tyau-Beam and/or Defendant Officer Beatty from acting in a manner which would deprive Plaintiffs of their constitutionally protected rights

> played a substantial part in bringing about or actually causing the injury and
> damages suffered by Plaintiffs.

Dkt. No. 1 at ¶¶ 133–135.

Simply stating something, however, does not make it so.  London fails to identify

any specific training that the Officers received or failed to receive,[8] explain how

any such training may have been inadequate, or describe how such failures

constitute deliberate indifference.  Notably, he makes no allegations that the

violations at issue constitute a pattern of misconduct on the part of the Officers or

the City, nor that they were a highly predictable consequence of obvious

deficiencies in existing training.[9]  Moreover, London also fails to describe how

such training or lack thereof resulted in any of the alleged unconstitutional

conduct, or allege how different or additional training may have prevented the

same.[10]  In sum, London's formulaic recitation of the elements of the claim,

---

[8]In his Opposition to the City's MJOP, London argues for the first time that the Court should
take "judicial notice" of a Hawaiʻi Public Radio article reporting that former Honolulu Police
Chief Susan Ballard purportedly stated during a police commission meeting that "she would
consider implicit bias training to address unconscious attitudes and stereotypes within the police
force."  Dkt. No. 71 at 5, 9–10; *see* Dkt. No. 71-4 at 4.  London, however, fails to provide any
legal authority to support the Court taking judicial notice of such statements in online articles
which, in any case, are largely irrelevant. *See Newman v. San Joaquin Delta Cmty. Coll. Dist.*,
272 F.R.D. 505, 516 (E.D. Cal. 2011) ("a party requesting judicial notice bears the burden of
persuading the trial judge that the fact is a proper matter for judicial notice.").
[9]London's response to the City's motion for judgment on the pleadings does little to cure the
Complaint's deficiencies in this regard.  Rather, London simply regurgitates Paragraph 134 while
failing to provide any explanation of *how* this conclusory paragraph supports the deliberate
indifference analysis. *See* Dkt. No. 71 at 9.
[10]London's Opposition again fails to cure this deficiency—instead, he argues only that Paragraph
133 of his Complaint "alleges the causal connection between the inadequate training and
deprivation of the alleged constitutional right."  Dkt. No. 71 at 9.

coupled with legal conclusions, is not sufficient.  *See Twombly*, 550 U.S. at 550.

As London has entirely failed to plead the necessary factual allegations to support

his *Monell* failure to train claim, it is consequently dismissed.

## V.   <u>Leave to Amend</u>

"In considering a motion for judgment on the pleadings, the district court has

discretion to grant partial judgment on the pleadings or to grant leave to amend."

*Tudela v. Hawaii State Bd. of Educ.*, 2021 WL 6052265, at *4 (D. Haw. Dec. 21,

2021) (citing *Lieblong v. Abella*, 503 F. Supp. 3d 1011, 1021 (D. Haw. 2020)).

Generally, regardless of whether a Plaintiff has requested leave to amend, he is

permitted to do so if "justice so requires."  Fed. R. Civ. P. 15(a)(2); *see Lopez v.

Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).  The Court may deny leave to amend

where amendment is sought in bad faith, would cause undue delay, would

prejudice the opposing parties, or would be futile.  *Serra v. Lappin*, 600 F.3d 1191,

1200 (9th Cir. 2010).  Particularly applicable here, leave to amend may be denied

where the Plaintiff's failure to oppose a dispositive motion renders amendment

futile.  *See Fabian v. Guild Mortg. Co.*, 2014 WL 12573004, at *4 (D. Haw. Feb.

11, 2014) ("insofar as the Motion is unopposed, Plaintiffs have failed to assert a

basis to maintain the claims alleged in the Complaint.  The Court therefore

concludes that any amendment would be futile."  (citing *Harris v. Amgen, Inc.*, 573

F.3d 728, 737 (9th Cir. 2009)); *United States ex rel. Jones v. Sutter Health*, 2021

WL 3665939, at *4–5 (N.D. Cal. Aug. 18, 2021) (dismissing claims with prejudice where the Plaintiff failed to oppose the Defendants' arguments).

Here, London has not sought leave to amend his Complaint. More importantly, however, London has almost entirely failed to oppose either of the two motions for judgment on the pleadings. *See* Dkt. No. 71 at 10 n.2; Dkt. No. 72 at 10 n.2. In particular, London has failed to address, and therefore explicitly conceded, the moving Defendants' arguments regarding the qualified privilege which disposes of all state law tort claims asserted against the Officers and the City via the doctrine of *respondeat superior*, and qualified immunity, which disposes of all federal claims against the Officers. Further, London has also apparently abandoned his claims against the City for negligent hiring, training, and/or supervision and *Monell* ratification. In this light, the Court concludes that further amendment would be futile and leave to amend those claims is denied.

Comparatively, there is no indication yet that permitting London to amend the one federal claim he does fully contest would be futile. Therefore, should he wish to do so, London is granted limited leave to amend only his *Monell* failure to train claim to address the deficiencies discussed herein.

## VI.   Remaining State Law Claims

Based on the foregoing, the following claims remain in this case: (1) the state law tort claims against the Rental Defendants (Counts I–IX, XIII, XIV); and

(2) the claims under the Hawaiʻi Fair Housing Act, Haw. Rev. Stat. §515, against the Rental Defendants and the Officers (Count VIII).  The Rental Defendants move for summary judgment on Counts I–III, asserting that such claims fail as a matter of law.  Dkt. No. 63.  Separately, the Officers move for judgment on the pleadings as to Count VIII, contending that the Hawaiʻi Fair Housing Act does not provide for their liability.  Dkt. No. 62-1 at 10–12.

A federal court, however, may not adjudicate claims over which it lacks subject matter jurisdiction.  *See Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006). The Court has now dismissed all federal claims in this case premised on federal question jurisdiction under 28 U.S.C. § 1331, permitting London to amend only his *Monell* failure to train claim.  As a successfully pled *Monell* failure to train claim would be the sole basis for federal subject matter jurisdiction, the Court therefore holds in abeyance consideration of the Officers' MJOP as to Count VIII and the Rental Defendants' motion for partial summary judgment, pending determination of the sufficiency of any potential amendment of that claim.[11]

## CONCLUSION

For the reasons set forth herein, Defendant City and County of Honolulu's Motion for Judgment on the Pleadings, Dkt. No. 61, is GRANTED and Defendant

---

[11]Should the Court find no basis for original subject matter jurisdiction, it intends to decline supplemental jurisdiction over the remaining state law claims.  *See* 28 U.S.C. § 1367(c)(3).

Officers Andrew Tyau-Beam and Byron Beatty's Motion for Judgment on the Pleadings, Dkt. No. 62, is GRANTED IN PART.  With respect to the City, the Complaint is DISMISSED WITHOUT LEAVE TO AMEND as to Counts I, IX, X, XI, XII (Claim 6), XIII, and XIV, and DISMISSED WITH LEAVE TO AMEND only as to Count XII (Claim 5).  With respect to the Officers, the Complaint is DISMISSED WITHOUT LEAVE TO AMEND as to Counts I, IX, XI, XII (Claims 1–4), XIII, and XIV.  The Officers' Motion for Judgment on the Pleadings as to Count VIII and the Rental Defendants' Motion for Partial Summary Judgment, Dkt. No. 63, are HELD IN ABEYANCE pending determination of whether there is a cognizable federal claim in this case.

London may have until **November 28, 2023** to file an amended Complaint to the extent allowed herein.

IT IS SO ORDERED.

DATED: November 13, 2023 at Honolulu, Hawai‘i.

Derrick K. Watson
Chief United States District Judge

_London v. Heh, et al., Civil No. 22-491 DKW-KJM_; **ORDER (1) GRANTING DEFENDANT CITY AND COUNTY OF HONOLULU'S MOTION FOR JUDGMENT ON THE PLEADINGS; (2) GRANTING IN PART DEFENDANTS ANDREW TYAU-BEAM AND BYRON BEATTY'S MOTION FOR JUDGMENT ON THE PLEADINGS; AND (3) HOLDING IN ABEYANCE DEFENDANTS MICHAEL HEH, MARIA HEH, WENDY STAFFORD, NICOLE LINKE, AND TURTLE BAY CONDOS LLC'S MOTION FOR SUMMARY JUDGMENT**